Commonwealth ex rel. Riggins, Appellant, *v.*
Superintendent of Philadelphia Prisons.

162

Argued November 26, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Brian E. Appel,* with him *Harold L. Randolph,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 26, 1970:

This case involves the challenged right of the President Judge of the Court of Common Pleas of Philadelphia to assign specially a Judge of the Trial Division of that Court to sit as a committing magistrate on the rearrest of a juvenile charged with murder and related crimes.

Louis Riggins, at the age of seventeen, was charged with murder and given a preliminary hearing on De-

cember 17, 1968, before Judge MONTEMURO of the then Juvenile Court Division of the Philadelphia County Court. Judge MONTEMURO discharged Riggins, ruling that a prima facie case had not been made out; from this Order the Commonwealth appealed to this Court. This Court quashed the appeal as interlocutory: *Riggins Case*, 435 Pa. 321, 254 A. 2d 616.

Thereafter, Riggins was rearrested and was again charged with the same murder. A preliminary hearing was held before Judge SLOANE, one of the Judges of the Philadelphia Court of Common Pleas, Trial Division. At this hearing, Riggins was held without bail for action by the grand jury. A pretrial petition for a writ of habeas corpus was filed in Riggins's behalf, which raised the following questions: (1) was Judge SLOANE's Order a nullity because, as a Common Pleas Trial Division Judge, he had no authority, power or jurisdiction to sit as a committing magistrate to hear matters involving juveniles; and (2) was Riggins deprived of his Constitutional rights, especially the equal-protection and the due-process guarantees of the Fourteenth Amendment to the Constitution of the United States, since the assignment of Judge SLOANE to sit as a committing magistrate was (a) at variance with the established custom and practice in Philadelphia and (b) beyond the power of the President Judge of the Court of Common Pleas.

Riggins's petition for a writ of habeas corpus was denied by the lower Court, and from the Order denying his petition Riggins took this appeal. The Commonwealth has moved to quash the appeal on each and both of the following grounds. First, the Commonwealth contends that an Order denying a pretrial petition for a writ of habeas corpus is interlocutory and unappealable. Secondly, the Commonwealth contends that the question on appeal is now *moot because more than a month before Riggins took his appeal to this*

*Court, he was indicted by a grand jury* for murder, aggravated assault and battery, assault and battery with intent to murder, carrying a concealed deadly weapon, unlawfully carrying a firearm without a license, and conspiracy. The Commonwealth further contends that the case is now *moot because Riggins is no longer a juvenile and a decision* in his favor in the present appeal *would simply result in his* rearrest and a hearing before a Judge of the Court of Common Pleas, Trial Division, and his *subsequent reindictment by a grand jury.*

In *Commonwealth ex rel. Boatwright v. Hendrick,* 436 Pa. 336, 260 A. 2d 763, we recently considered the right of appeal from the denial of a pretrial habeas corpus petition, and there laid down the following principles (pages 338-339) : "In cases involving criminal proceedings, an Order by a Judge of the Court of Common Pleas, *denying, before indictment,** a writ of habeas corpus where the ground of appeal is the lack of adequate evidence to establish a prima facie case of crime by the accused, is interlocutory and unappealable and must be quashed: Commonwealth ex rel. Gordy v. Lyons, 434 Pa. 165, 252 A. 2d 197; Commonwealth ex rel. Bittner v. Price, 428 Pa. 5, 235 A. 2d 357; Commonwealth ex rel. Fisher v. Stitzel, 418 Pa. 356, 211 A. 2d 457; in the absence of exceptional circumstances (as, for example, cases involving great public interest or the safeguarding of basic human rights, Commonwealth v. Kilgallen, 379 Pa. 315, 108 A. 2d 780; Commonwealth v. Byrd, 421 Pa. 513, 219 A. 2d 293, cert. denied, 385 U.S. 886) ; or, unless expressly made so by statute, Commonwealth v. Pollick, 420 Pa. 61, 215 A. 2d 904; Commonwealth v. Wright, 383 Pa. 532, 119 A. 2d 492; or a challenge to appellant's custody on grounds of lack of jurisdiction, Commonwealth ex rel. DiDio

---

* Italics throughout, ours, unless otherwise indicated.

v. Baldi, 176 Pa. Superior Ct. 119, 106 A. 2d 910; Commonwealth ex rel. Nichols v. Hendrick, 197 Pa. Superior Ct. 646, 180 A. 2d 88."

Riggins contends, inter alia, that his case involves both "exceptional circumstances" and a challenge to his custody on the ground of lack of jurisdiction, and thus falls within the above-mentioned exceptions. In view of the fact that this case necessarily involves an interpretation of the Judiciary Article V of the Constitution of Pennsylvania adopted in 1969, we believe this case involves great public interest and importance as well as a novel question of jurisdiction, and shall therefore decide it on the merits.

The new Constitution of Pennsylvania has consolidated all of the former separate Courts of Philadelphia County, such as the Court of Common Pleas, the Court of Oyer and Terminer and General Jail Delivery, Courts of Quarter Sessions of the Peace, Orphans' Court and County Court (which had a domestic and a juvenile division), into a Philadelphia Court of Common Pleas *with three Divisions*—a Trial Division, and an Orphans' Court Division, and a Family Court Division. Prior to this consolidation, the practice in Philadelphia was to bring *juveniles charged with murder* before a Judge of the juvenile division of the County Court for the purpose of conducting a preliminary hearing: *Gaskins Case,* 430 Pa. 298, 244 A. 2d 662. It is Riggins's contention that since the adoption of the Constitution and the consolidation of the Philadelphia Courts, (1) a juvenile must be given a preliminary hearing *only before* a Judge who is a member of or regularly assigned to the Family Court Division, and, therefore, the President Judge of the new Court of Common Pleas had no right or power to specially order that Riggins's preliminary hearing on rearrest be held before Judge SLOANE, who is a member of and regularly assigned to the Trial Division of the Common Pleas

Court; and (2) it is the function, right and power of the Administrative Judge of the Family Court Division to assign the case to one of the Judges in his Division. We disagree with Riggins's interpretation.

Riggins appears to place his principal reliance on the following provisions of Section 16 of the Schedule to the Judiciary Article:

"The City of Philadelphia

"Section 16. Courts and Judges.—Until otherwise provided by law: (a) the court of common pleas shall consist of a trial division, orphans' court division and family court division.

. . .

"(c) The judges of the county court shall become judges of the family court division of the court of common pleas and their tenure shall not otherwise be affected.

. . .

"(q) The court of common pleas *through the family court division* of the court of common pleas shall exercise jurisdiction in the following matters:

. . .

"(ii) Juvenile Matters: dependent, delinquent and neglected children and children under eighteen years of age, suffering from epilepsy, nervous or mental defects, incorrigible, runaway and disorderly minors eighteen to twenty years of age and preliminary hearings in criminal cases where the victim is a juvenile.*
. . ."

A more persuasive argument could be made that Riggins's preliminary hearing should have been con-

---

* We note parenthetically that Riggins does not contend that the *victim* in this case was a juvenile, nor does the record indicate that such was the case. Consequently, we see nothing in these provisions that mandates that a juvenile charged with a crime where the victim was not a juvenile must be given a preliminary hearing before a Judge of the Family Court Division.

ducted before a Municipal Court Judge (formerly known as a magistrate) in light of Section (r) of the Schedule, which provides:

"(r)   The municipal court shall have jurisdiction in the following matters: (i) Committing magistrates' jurisdiction in all criminal matters. . . ."

The new Judiciary Article V contains clauses or provisions some of which are ambiguous, and some overlapping or conflicting.   It is important, and sometimes necessary, to carefully analyze and consider the individual provisions with the Article in its entirety.

Section (o) of the Schedule to the new Judiciary Article V provides, in pertinent part, that "the court of common pleas shall have all the jurisdiction now vested in the court of common pleas, the court of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' court, and county court."

We first hold that the power of all Common Pleas Court Judges to sit as committing magistrates, which power existed prior to the adoption of the new Judiciary Article, continues to be retained by the Judges of the Court of Common Pleas.

With respect to the power of the President Judge to assign Judges, Sections 16(f) and 16(g) of the Schedule to the Judiciary Article pertinently provide:

"(f)   One of the judges of the court of common pleas shall be president judge and he shall be selected in the manner provided in section ten (d) of this article.   He shall be the administrative head of the court and shall supervise the court's judicial business.

"(g)   Each division of the court of common pleas shall be presided over by an administrative judge, who shall be one of its judges and shall be elected for a term of five years by a majority vote of the judges of that division. *He shall assist the president judge in supervising the judicial business of the court and shall*

*be responsible to him.* Subject to the foregoing, the judges of the court of common pleas shall prescribe rules defining the duties of the administrative judges. *The president judge shall have the power to assign judges from each division to each other division of the court when required to expedite the business of the court."*

Even if it be assumed arguendo that Riggins should have his original preliminary hearing held before a Judge of the Family Court Division, Section 16(g), supra, specifically provides (we repeat) that "the president judge [of the Court of Common Pleas] shall have the power to assign judges from each division to each other division of the court when required to expedite the business of the court." It is clear, therefore, that the President Judge has the Constitutionally granted power to assign any Judge from any Division of the Court of Common Pleas to any other Division of the Court to sit, consequently, as a committing magistrate. Judge SLOANE had the jurisdiction, the right and the power to hear the Riggins case on his rearrest and to hold him for action by the grand jury.

Riggins further contends that the assignment by President Judge CARROLL of Judge SLOANE to sit as a committing magistrate in this case departed from the general practice in Philadelphia because the accused should be brought before the Judge of the Trial Division of the Court of Common Pleas who is assigned to hear miscellaneous criminal motions. He further states that at the time of the assignment of Judge SLOANE, that Judge had already been specially assigned to supervise an investigating grand jury and the Judge who was assigned to the "miscellaneous criminal motion" list was available. Even assuming arguendo the fact of these allegations, there is no allegation that the alleged customary general practice involved a procedure

or practice *mandated* by law, nor does Riggins indicate in what manner he was injured by this assignment.

We find no merit in any of Riggins's contentions.

Order affirmed.

Mr. Justice COHEN and Mr. Justice POMEROY would dismiss this case as moot, and therefore disagree with the Majority's statement that "This case necessarily involves an interpretation of the Judiciary Article V of the Constitution of Pennsylvania."

------

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree with the Commonwealth's contention that Riggins' subsequent indictment rendered the propriety of the original commitment moot, and I believe the majority errs in rendering a decision on the merits of this case.[1] See *Commonwealth ex rel. Boatwright v. Hendrick,* 436 Pa. 336, 339, 260 A. 2d 763, 765 (1970) (notation); *Commonwealth ex rel. Bittner v. Price,* 428 Pa. 5, 6-7, 235 A. 2d 357, 358-59 (1967) (concurring opinion).

Since, however, the majority has seen fit to express its views on the merits of the case, I must express my disagreement with much of the substance of its opinion. First, I believe that Riggins' preliminary hearing should properly have been heard by a judge of the Family Court Division. In *Gaskins Case,* 430 Pa. 298, 244 A. 2d 662 (1968), this Court said: "We, therefore, hold that when a juvenile has been charged with murder, and a prima facie case has been made out by the Commonwealth in Juvenile Court proceedings, such juvenile must be held for further criminal proceedings." 430 Pa. at 310, 244 A. 2d at 669. And earlier in the same opinion we noted with approval the Common-

------

[1] At the very least the appeal is, as the Commonwealth contends and the majority admits, interlocutory, and should be quashed and not affirmed.

wealth's contention that ". . . the purpose of this procedure is to assure a juvenile that he will enjoy the protection afforded by the Juvenile Court until the Commonwealth has presented a prima facie case of murder." 430 Pa. at 307, 244 A. 2d at 667. I feel that it is ill-advised of the majority to abandon an entirely salutory rule which we so recently approved and adopted as our own.

My second disagreement with the majority concerns its interpretation of the new Article V of the Constitution of the Commonwealth of Pennsylvania.[2] The majority apparently believes that Section 16(g) of the schedule to that article justifies the procedure used in this case.[3] I cannot agree for two reasons. First, I can find no indication that the trial division jurist assigned to hear this case sat as a member of the Family Court Division and not as a trial division member. At the very least a trial division judge specially assigned to hear a case properly brought in the Family Court Division is required to conduct those proceedings in accordance with the rules of the division to which he has been assigned. Secondly, I do not believe that Section 16(g) authorizes the transferral of a judge to another division for the sole purpose of holding a single preliminary hearing where there is nothing in the record to indicate that the special assignment was in any way "required to expedite the business of the court."

I dissent and would dismiss the appeal as moot.

---

[2] It is curious that while the majority think the provisions of Article V "ambiguous . . . overlapping or conflicting . . .," they have no trouble applying its meaning to the facts of this case, characterizing its proper construction as "clear."

[3] Section 16(g) of the schedule to Article V of the Constitution of the Commonwealth of Pennsylvania provides, inter alia, that "[t]he president judge shall have the power to assign judges from each division to each other division of the court when required to expedite the business of the court."