**Commonwealth v. Schwartz**

*Charles Haddad,* for Commonwealth.

*F. Emmett Fitzpatrick, Jr.,* for defendant.

SMITH, J., May 31, 1972.—Twenty indictments returned by the grand jury of June sessions, 1970, charged this defendant with 14 offenses as follows:

Interfering with police officer
Escape through negligence
Obstructing justice
Conspiracy
Corrupt solicitation
Blackmail
False pretenses
Bribery
Bribery of servants and employees
Larceny by bailee
Burglary
Receiving stolen property
Bringing stolen property into Commonwealth
Larceny by bailee; fraudulent conversion.

Defendant has made six pretrial applications to quash various of these indictments, each motion asserting a different ground. A hearing of certain of these motions included the taking of testimony on factual issues raised by the Commonwealth's answers to the motions. All six are now ready for disposition.

I

Indictments nos. 1064-1067 are challenged on the

ground they were returned in violation of defendant's right to have 10 days notice of their presentment to the grand jury. The fact is undisputed that the indictments in question were returned June 17, 1970, after being presented by special leave sought and obtained by the Commonwealth of Judge Samuel Rosenberg of this court on that very day. Judge Rosenberg was the judge regularly in charge of the grand jury then in session. The fact is also undisputed that the statute of limitations was about to run on certain of the alleged criminal acts the Commonwealth sought to charge against defendant, and that this ground for haste was asserted in the petition of the Commonwealth. Counsel for defendant, while given only a few minutes notice of the proposed action of the Commonwealth, was present and opposed the application. Judge Rosenberg granted it under the provisions of Pennsylvania Rule of Criminal Procedure 203(c), which permitted the court "for good cause shown" to authorize presentment of an indictment without the otherwise mandated 10-day interval after preliminary hearing.

The pretrial hearing judge is aware of no authority vested in him to review and affirm or overrule the action of Judge Rosenberg, a judge of equal and coordinate jurisdiction. His action may be reviewable on appeal from conviction, should that be the outcome of trial, but not before. It may be of some aid to a reviewing tribunal, since the pretrial hearing judge has listened to and pondered testimony and argument on the contention, to state the result of his reflection.

That the statute of limitations is about to run on an alleged criminal offense would seem, if anything should be, good cause to permit quick submission of a presentment, without the normal 10-day interval. Even if the necessity has arisen by reason of negligence

on the part of the prosecutor or other officer of the Commonwealth, defendant possesses no inherent right to benefit by that negligence and to have the interest of the community denied relief from that negligence though it be at the last moment.

The factual controversy in the case is over the accuracy of the reason stated in the petition presented to Judge Rosenberg as accounting for the Commonwealth's dilatoriness to the last possible day in seeking the indictments in question. The Commonwealth alleged there had been an informal agreement with defense counsel not to indict pending disposition of appeals already perfected to the Superior Court of Pennsylvania, by which defendant sought to overturn actions of Judge Joseph Sloane sitting as committing magistrate at preliminary hearing. Defendant denied any such agreement and contended the Commonwealth's delay in securing indictments was its own pure negligence from which it was not entitled to be relieved at the sacrifice of his right to 10-days notice of presentment to the grand jury.

In the opinion of the pretrial hearing judge, determination of this issue, whether by Judge Rosenberg or on this application, is immaterial to the finding of good cause for immediate submission of the presentment arrived at by Judge Rosenberg. The controlling fact was that otherwise defendant would escape prosecution on the charges over which the statute of limitations was imminent. How that came to be the fact does not alter it as a fact.

But even careful examination of the circumstances through which the prosecution of the case was allowed to languish until the very last day of indictability is not persuasive toward the granting of the present application. The circumstances were these: Defendant filed some 14 appeals in the Superior Court of Penn-

sylvania from actions of Judge Sloane sitting as committing magistrate which to him appeared flagrantly erroneous. He then petitioned for grant of supersedeas on each appeal. These petitions came before Judges Spaulding and Hoffman, of the Superior Court. There is no dispute that the Commonwealth's attorney, Mr. Crawford, at that point made a voluntary undertaking to the court, representing it would be unnecessary for it to grant the relief sought by defendant, supersedeas, because he would promise that no further steps would be taken in the lower court until a certain later point. The parties disagree flatly on what was to be the later point; Mr. Crawford's recollection is that it was until the appeals were disposed of, and he expected this to be swiftly accomplished by grant of the Commonwealth's motion to quash. Defense counsel's recollection is that it was until the petition for supersedeas was acted upon. The Superior Court judges denied the supersedeas within a few days. By reason of a number of continuances, the appeals remained pending and were not finally quashed until more than a year later.

The testimony for the Commonwealth is that defense counsel assented to this offer by the Commonwealth to stay its hand pending a ruling in the appellate court. Defense counsel's testimony is that he made no response whatever to the proposal and that no agreement came into being. Thus, defense counsel strenuously challenges the assertion in the petition to Judge Rosenberg that the reason for the Commonwealth's laggardly prosecution was the existence of "an informal agreement."

To the view of the pretrial hearing judge, it is unnecessary that defense counsel have become party to an agreement for the proposal to be binding on the Commonwealth. A representation to a court that it

need not grant a defendant relief he is seeking because the Commonwealth will afford him the relief voluntarily, is amply binding. Otherwise, courts and counsel in practice before them could not deal responsibly with each other. On the Commonwealth's own version, it becomes bound for some indefinite time, until the appeals were disposed of, not to prosecute further.

But whatever might be the case if the statute of limitations were years off in the future, no proposal or agreement whatever could bind the Commonwealth not to act when it found its prosecution about to be barred. Such a proposal or agreement would be one to commit dereliction of sworn official duty, and void for illegality.

On the version of defense counsel, the Commonwealth was not bound by its voluntary proposal to the Superior Court, certainly not by any joinder therein by him to constitute it an agreement: therefore, the Commonwealth remained completely free to proceed to indict at any time, and was simply overtaken in the end by its own negligence. Supposing these to be the facts, and granting the argument its full force, the contention is unpersuasive that a prosecution still viable on the last day of its statutory limitation must be stifled.

For a further more practical reason, the present application to quash must be held unmeritorious. This is that defendant has suffered no actual prejudice through the Commonwealth's being permitted to proceed to indictment forthwith, despite lack of 10 days notice to defendant. The purpose served by the 10-day interval mandated by rule 203 is to allow defendant an opportunity to challenge the array of the grand jury or the qualifications of a particular juror: Commonwealth v. Dessus, 423 Pa. 177, 224 A. 2d 188;

Commonwealth v. Collemacine, 429 Pa. 24, 239 A. 2d 296. But rule 203(c) expressly contemplates submission of a presentment, by leave of court, without a 10-day delay, and is silent as to how the right to challenge, whether the array or individual qualifications, is then to be exercised. The answer would seem to be that the law antedating rule 203 and governing circumstances not expressly provided for in the rule is left unchanged by the rule, to wit, defendant is privileged to challenge the array and formation of the grand jury at any time until a plea is entered or a jury sworn: Commonwealth v. Bruno, 203 Pa. Superior Ct. 541, 547, 201 A. 2d 434, 436.

To hold otherwise, and to conclude that the Commonwealth, whatever the reason for its failure to do so earlier, cannot indict within the last 10 days of the statutory period of limitation by reason of having then fallen afoul of the requirements of rule 203, is to say that rule 203 has shortened the legislatively prescribed period of limitation from two years to one year and 355 days. The pretrial hearing judge is unable to declare that a Rule of Criminal Procedure was thus intended, or is capable of working the amendment of a legislative enactment by implication. Insofar as the terms of the two pronouncements may seem to be in conflict, it is the duty of the court to resolve the conflict by appropriate construction, and this is the one above set forth, that defendant's rights are preserved him.

Finally, however, it appears that defendant has not attempted to exercise his rights. The indictments under attack for supposed lack of requisite notice are four of 20, all returned by the same grand jury, that of June sessions, 1970. But defendant has made no challenge to the array or to the individual qualifications of any juror thus empanelled as to any of the 16

other indictments not included in this application. The conclusion is inescapable that the supposed denial of rights now urged is grounded in theory, not substance. The reasoning and language of Commonwealth v. Bruno, supra, therefore become apt:

". . . Appellants contend that they were denied a substantial right, viz., the right to challenge the array of the January, 1961 grand jury, since they did not have notice of the fact that it was to consider the matters. However, they made no effort to challenge the array of the grand jury prior to trial, and they have not set forth in what manner they have been prejudiced . . . Therefore, in the present case, in the absence of any prejudice being shown and any attempt being made to challenge the array of the January, 1961 grand jury, we also must hold this contention to be without merit."

For all these reasons, the application to quash indictments nos. 1064, 1065, 1066 and 1067 for lack of timely notice of presentment to the grand jury is denied.

## II

The second application is to quash indictments nos. 1064, 1065, 1066, 2027, 2033, 2034, 2035, 2036 and 2037.

The asserted defect in these nine indictments is that defendant was held on the charges they recited without sworn complaint, preliminary arraignment or preliminary hearing. These charges were the outcome of a preliminary hearing held April 27, 1970, before the Hon. Joseph Sloane, of Philadelphia County Common Pleas Court, Criminal Division, sitting as issuing authority. The preliminary hearing was convened to take testimony pursuant to a warrant of arrest issued on an affidavit of complaint charging five offenses,

conspiracy, corrupt solicitation, bribery, practice of corrupt solicitation and cheating by false pretenses. Judge Sloane interpreted the testimony before him as establishing, prima facie, the commission of not only these five offenses, but nine in addition, and ruled that defendant was held on 14 charges altogether.

Defendant's contention is that these nine additional charges were not set forth in the complaint, that no preliminary arraignment was held on them, and that the preliminary hearing held before Judge Sloane cannot be considered to have been a preliminary hearing as to them. The Commonwealth's position is that these nine offenses were cognate to those set forth in the complaint and warrant, on which the preliminary arraignment was held, and that the commission of them was implicit in the testimony given at preliminary hearing.

The principle governing these contentions is, basically, that declared in Commonwealth v. Musto, 348 Pa. 300, 303, 35 A. 2d 307:

"A defendant should not be required to answer a charge in different form, and unrelated to, the one for which he was arrested and held to bail."

Pennsylvania Rule of Criminal Procedure 213, speaking to contents and form of an indictment, now supplies two indications as to what is encompassed within or excluded from the range of meaning expressed by the words "a charge different from and unrelated to . . ." Rule 213(a) provides:

"The issues at trial in all court cases should be defined by the indictment."

Rule 213(b) (5) reads:

"An indictment shall be . . . valid and sufficient in law if it contains:

"(5) A plain and concise statement of the essential

elements of the offense substantially the same as are cognate to the offense alleged in the complaint; . . ."

Rule 213(b)(5) represents a codification of prior law as enunciated by our appellate courts: Commonwealth v. Danner, 79 Pa. Superior Ct. 556 (1922); Maginnis's Case, 269 Pa. 186, 195 (1921); Commonwealth v. Dunnick, 204 Pa. Superior Ct. 58, 202 A. 2d 542 (1964).

The Rules of Criminal Procedure and, indeed, the reported cases are silent as to any comparable standard applicable to the framing of the charges considered to have been established, prima facie, by the testimony given at preliminary hearing. But it is logically persuasive that the same standard should be determinative of the earlier as of the later point of the prosecution. The dictionary (Webster's 3d New International) meaning of "cognate" is "related, akin or similar, especially in having the same or common or similar nature, elements, qualities, or origin . . ." Virtually the same definition of the term is found at 14 C. J. S. p. 1309. The essential idea conveyed by this definition is echoed by Commonwealth v. Danner, supra:

"Any crime arising out of the same transaction can be laid in the indictment . . .The offenses charged were of a cognate nature and were a part of the same affair."

Careful review of the testimony given at preliminary hearing indicates that the additional nine charges on which Judge Sloane held defendant satisfied the standard of being "cognate" with those for which he was arrested, that is, they were related to, or had common elements or a common origin with the first set of charges, or sprang from the same alleged facts as portrayed by the testimony. That testimony described a far-ranging and long-sustained course of dealing

between defendant and the witnesses, McKinney and Ghaul, in which defendant was asserted to have solicited and abetted the commission of repeated burglaries, to have knowingly received the fruits thereof, used them corruptly to enable the witnesses, though convicted criminals under sentence of court, to continue at liberty, or escape from custody, and the like. One who aids or abets the commission of a felony such as burglary is fully chargeable as a principal: 18 PS §5105.

The other additional charges announced by Judge Sloane as his holding, fraudulent conversion, blackmail, larceny by bailee, permitting prisoner to escape, obstructing officer, bringing stolen property into the State, and obstructing criminal justice, have equally good foundation in the purported facts developed at the preliminary hearing.

This court's independent research has disclosed no authority, and none has been cited to it, holding that a defendant is denied a preliminary hearing because a complaint or a warrant of arrest does not forewarn him, eo nomine, of an offense for which, or a section of the penal statutes under which, he is held for court, provided the unspecified offense is implicit in the conduct attributed to him at the hearing as supporting the original charge. If some additional factual element, some shade of intent or consciousness, were an essential ingredient of the unspecified charge, defendant might be entitled to assert surprise, and insist that the hearing be reopened to permit him renewed cross-examination of enlarged scope. But defendant here has pointed out no particular element of the nine additional charges, the existence of which is left any more doubtful, by the testimony, than the original charges, or which he was misled into not attacking by wider cross-examination. In fact, the

record shows defendant was allowed unrestricted cross-examination.

The application to quash indictments nos. 1064, 1065, 1066, 2027, 2033, 2034, 2035, 2036 and 2037 for alleged lack of complaint, preliminary arraignment, and preliminary hearing is, for these reasons, denied.

### III

The third application of defendant is to quash all 20 indictments on the ground that the preliminary hearing before Judge Sloane was held in violation of Pennsylvania Rule of Criminal Procedure 117, then in effect, but since abrogated. In pertinent part, that rule then read:

"All preliminary hearings shall be publicly held in the usual and customary place established and used for the purpose. . . ."

Defendant contends that in the City of Philadelphia that "usual and customary place" is one of the Divisional Police Courts, not a City Hall courtroom of the Common Pleas Court.

Perforce, defendant concedes the authority of Judge Sloane as a common pleas judge to sit as committing magistrate; Commonwealth ex rel. Riggins v. Superintendent of Phila. Prisons, 438 Pa. 160, 263 A. 2d 754, and Commonwealth v. Dawkins, 216 Pa. Superior Ct. 198, 264 A. 2d 722 (1970), settled this beyond doubt. It is the locus of the hearing that defendant maintains is mandated as other than a common pleas courtroom.

The pretrial hearing judge considers defendant's reasoning quite mistaken. To even the casual eye, the purpose of the rule, while it was in effect, was to protect against the arbitrariness and oppressiveness of scheduling a preliminary hearing at some out-of-the-way place in the county, geographically inconvenient for parties, counsel and witnesses of each or both sides,

or otherwise unsuitable for the purpose. Nothing remotely of the kind can be charged against a City Hall courtroom. When the reason for the rule ceases, so does the rule (Cessante ratione, cessat et ipsa lex).

The application is denied.

IV

Defendant's fourth application is to quash indictments nos. 2028, 2029, 2030 and 2033 on the ground that on their face they show the offense charged to have been barred by the statute of limitations.

The applicable statute of limitations is two years. Each of these four indictments was returned July 1, 1970, and uniformly each alleges that "on or about August 1, 1964 and on divers dates thereafter to and including June 30, 1968 . . . Albert Schwartz, etc." On that statement standing alone, the indictments would have to be struck down as defective. Commonwealth v. Silverstein, 445 Pa. 497, 284 A. 2d 773 (1971), is clear that when the only specific date mentioned in the indictment is prior to the date of the indictment by more than the applicable statutory period, an application to quash must be granted. But such a defect is curable by amendment, a circumstance rendering Silverstein readily distinguishable. The report of that case and particularly the dissenting opinion filed, makes it clear that no attempt was made to amend the indictment there held faulty. Here, the Commonwealth by formal petition has sought leave to amend the four indictments now challenged to allege that the offenses charged, being of a continuing nature, commenced on August 1, 1964, and persisted until and including September 9, 1968.

There is abundant authority for the propriety and the permissibility of such an amendment: Act of March 31, 1860, P. L. 427, sec. 11, 19 PS §431; Com-

monwealth v. Streets, 113 Pa. Superior Ct. 65, 172 Atl. 31 (1934); Pa. Rule of Criminal Procedure 220. Mistaken allegation of the date of an offense is a formal defect, capable of remedy by amendment even at trial, if the corrected date is prior to indictment and within the period prescribed by the Statute of Limitations: Commonwealth v. Syren, 150 Pa. Superior Ct. (1942).

This application is denied.

## V

Defendant's fifth application is to quash all 20 indictments on the ground the information contained in the warrant of arrest was obtained in violation of the secrecy binding the grand jury. The application avers that it was defendant himself who appeared as a witness before the Special Investigating Grand Jury, and that the warrant of arrest was based in part on revelations contained in this testimony, though no assertion is made that his constitutional privilege against self-incrimination was in any way invaded.

Defendant's argument in support of the application shifts away from any reference to defendant's having been a witness, to a different contention. This is that McKinney and Ghaul, the two confessed felons and convicts with whom defendant is charged with scheming to perpetrate a variety of offenses, were witnesses before this Special Investigating Grand Jury, but were deliberately withdrawn by the Commonwealth, to avoid the risk of having their testimony utterly disbelieved and rejected, with no presentment against defendant being framed; that then the Commonwealth pursued the alternative course of having them give the same information in support of a warrant of arrest, resulting in preliminary hearing, holding for court and indictment. This course of conduct,

defendant asserts, represents a breach of the secrecy binding all grand jury proceedings.

Defendant submits no authority for the proposition so advanced, and no testimony in support of the factual hypothesis on which the contention is based. The Commonwealth presented affirmative testimony, believed by the pretrial hearing judge, that the information constituting the foundation of the warrant of arrest was given a Philadelphia police detective prior to the appearance of either McKinney or Ghaul before any grand jury.

In any event, had grand jury secrecy been violated, it would not lie in defendant's mouth to complain. Many authorities have declared that the secrecy binding the grand jury is not for the benefit of the defendant, but of the Commonwealth, the grand jurors themselves, and the witnesses: U. S. v. Smyth, 104 F. Supp. 283 (N. D. Cal., 1952); Commonwealth v. Kirk, 141 Pa. Superior Ct. 123, affd. 340 Pa. 346 (1941); Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107 (1940).

The application is denied.

## VI

Sixth and last of defendant's applications is one to quash 16 indictments, nos. 2026-2041 for lack of sufficient specificity of the date of the offense alleged. The same phraseology is common to all, i.e., "on or about (beginning date) and on divers dates thereafter to and including (concluding date), etc." The period between the first and last dates varies from one indictment to another, ranging from two years one month to four years two months. Defendant asserts the fixing of the time of the alleged offense as only varying between these limits amounts to such vagueness as to make it impossible for him to defend, and

contends he is entitled to have such an indictment quashed.

In the opinion of the pretrial hearing judge, whatever uncertainty defendant feels left in by the language of the indictment as drawn can be remedied by a bill of particulars, which Rule of Criminal Procedure 221 gives defendant a right to request. Well-recognized holdings of our appellate courts state that if an indictment charges plainly the commission of an offense, but is otherwise vague or indefinite, the remedy is not to quash it, on motion, but to eliminate the indefiniteness by means of a bill of particulars: Commonwealth v. Hershman, 171 Pa. Superior Ct. 134 (1952). On this ground, the application fails.

Argument on the application, however, developed the further question whether any of the indictments were duplicitous as charging more than one offense in a single count. Under this heading, the Commonwealth has conceded that indictments nos. 2034, 2035 and 2036 should be quashed.

The language of indictment no. 2026 is "directly or indirectly by offer or promise of money or other things of value, endeavored to influence certain public officers in the discharge, performance or nonperformance of an act, duty, or obligation pertaining to such office." This language is of sufficient clarity to charge the named offense, corrupt solicitation, and when defendant's alleged wrongful act and design are clearly set forth, the indictment is not required to individuate among the particular acts of the officer as the object of the criminal design, whether performance or nonperformance of one duty or another.

Indictment no. 2027 alleges only acts which are successive steps in commission of the ultimate offense, blackmail. Nos. 2028 and 2041 allege the false

pretense that defendant would procure the unlawful dismissal of a prosecution or obviate or minimize the legal penalties for conviction. These are not mutually exclusive alternatives, one is the partial, the other the total, achievement of a stated design.

Nos. 2029 and 2040 are couched in the language "did accept or receive, or agree to accept or receive, certain money, etc." The agreement to accept or receive a bribe and its actual acceptance or receipt coalesce so indistinguishably that it is impossible to say where one ends and the next begins, or to hold these other than parts of the same transaction.

Nos. 2030 and 2039 charge solicitation of a bribe "for doing or omitting to do an act or for showing favor or disfavor in relation to the affairs of his principal." With signal clarity, this language asserts commission of a crime, the remainder relates to the defendant's motive for the solicitation. The Commonwealth is not required to plumb the motives of defendant, nor to set them forth categorically.

No question is raised as to no. 2031, and there is no defect apparent in nos. 2033 and 2037.

Nos. 2032 and 2038 charge conspiracy to commit five different offenses. Though the object of the conspiracy may be multiple, the conspiracy charged is single, and a single conspiracy may very readily be directed to the commission of a number of offenses.

In the court's opinion none of the variants or alternatives in phrasing thus revealed render any of these indictments defective for duplicity. Accordingly, this application is denied.

## ORDER

Now, to wit, May 31, 1972:

Indictments nos. 2034, 2035 and 2036 of June sessions, 1970, are quashed.

As to all other of the above indictments, all applications to quash are denied.