Commonwealth *v.* Amick, Appellant.

Submitted December 6, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Marjorie H. Matson,* for appellant.

*John Woodcock, Jr.* and *Clyde O. Black, II,* Assistant District Attorneys, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., December 11, 1972:

This appeal raises important and delicate constitutional questions concerning the seizure of allegedly obscene literature which led to the prosecution of appellant for possession of obscene matter with the intent to sell.

Appellant's book store in Altoona, Blair County, was the subject of two searches conducted by way of general search warrants under date of July 30, 1968 and June 26, 1969. Certain materials were seized on each occasion. A Motion to Suppress was refused on June 5, 1970 by the Court below. At the election of appellant, the matters were tried before the Court without a jury, at which time both cases were consolidated.

At trial, Commonwealth introduced into evidence twenty-two exhibits, consisting of certain of the seized items and constituting a "sampling" of the 19 cartons of materials that had been confiscated as a result of both raids. In addition, Commonwealth presented the testimony of the prosecuting officer and four lay witnesses from Blair County, who concluded that, based upon their examination of some of the seized items, the literature was obscene. The competency of the witnesses was challenged by defense counsel, which objections were overruled.[1]

Appellant was thereafter found guilty of the violations with which he was charged. The Court refused post-trial motions, and on July 13, 1971, sentenced appellant, imposing a fine of $15,000 plus costs, and setting terms of imprisonment on the two charges of four to eight months and seven to fourteen months, to run

---

[1] Appellant has raised the question of whether the lay witnesses, in the instant case, were competent to testify that the material examined by them was obscene. This and certain other contentions, while possibly meritorious, need not be considered here, as we find the case dispositive on procedural grounds, discussed *infra.*

consecutively. Appellant was refused release on bail pending appeal, but this Court granted supersedeas upon the posting of a surety bond in the amount of $1,000.

Appellant contends that police unlawfully made mass seizures of material from his place of business, and that such seizures constituted an invasion of his First and Fourteenth Amendment rights. It is well-recognized that obscenity is not within the area of protected speech guaranteed by the First Amendment. *Roth v. United States,* 354 U.S. 476 (1957). The United States Supreme Court, in *Marcus v. Search Warrant,* 367 U.S. 717, 731 (1961), however, emphasized that ". . . under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity."[2] The Court rejected the contention that obscene literature was contraband, to be searched for and seized as if it were a gambling device, narcotic drug, or other contraband. Recalling the origin and purpose of the First Amendment, the Court stated at p. 729: "The Bill of Rights was fashioned against the background of knowledge that unrestricted power of search and seizure could also be an instrument for stifling liberty of expression."

In a case following *Marcus,* Justice BRENNAN writing for the Court found a procedure, whereby a stock of books was seized pursuant to a search warrant issued by an authority in an *ex parte* proceeding, constitutionally deficient, saying, "For if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgement of the right of the pub-

---

[2] We take particular note of the fact that the United States Supreme Court has repeatedly held that any prior restraint on expression comes to the Court with a "heavy presumption" against its constitutional validity. *Organization for a Better Austin v. Keefe,* 402 U.S. 415 (1971); *Carroll v. Princess Anne,* 393 U.S. 175 (1968); *Bantam Books v. Sullivan,* 372 U.S. 58 (1963).

lic in a free society to unobstructed circulation of non-obscene books." *Quantity of Books v. Kansas,* 378 U.S. 205, 213 (1964); see also *Freedman v. Maryland,* 380 U.S. 51 (1965).

Like *Quantity of Books,* supra, the instant case presents a situation where seizures were made pursuant to a general search warrant, and without a prior adversary proceeding to determine obscenity.[3]

Applying these principles, our Pennsylvania courts have repeatedly struck down "prior restraints". In *Smith v. Crumlish,* 207 Pa. Superior Ct. 516, 218 A. 2d 596 (1966), our Court held that the seizure of a movie without a prior adversary hearing was unconstitutional. Citing the Supreme Court cases dealing with printed matter, discussed *supra,* we held that "only a judicial decision in an adversary proceeding ensures the necessary sensitivity to freedom of expression." (at p. 522). A number of Pennsylvania Supreme Court decisions have set down the same requirements to prevent abridgement of precious First Amendment rights, as enunciated in *Smith v. Crumlish,* supra. *Duggan* v.

---

[3] We find that the warrants issued and executed, in the instant case, were in violation of appellant's Fourth Amendment rights. The warrant which led to appellant's first arrest authorized seizure of books and magazines of a "lewd, obscene and lascivious nature." The warrants used to make these mass seizures were general in nature, lacking any pretext of particularity, and hence were constitutionally prohibited by the Fourth Amendment. *Stanford v. Texas,* 379 U.S. 476 (1965). We cannot accept the argument of the lower Court that the "plain view" doctrine could obviate the necessity of reaching the issue of the warrants' validity. As obscene matter is not contraband nor is it the type of evidence that would sustain a warrantless search under "exigent circumstances", we adopt the language in *Coolidge v. New Hampshire,* 403 U.S. 443, 471 (1971), that ". . . to extend the scope of such an intrusion to the seizure of objects—not contraband nor stolen nor dangerous in themselves— . . . would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure."

*807 Liberty Avenue, Inc.,* 447 Pa. 281, 288 A. 2d 750 (1972) ; *Commonwealth v. Guild Theatre, Inc.,* 432 Pa. 378, 248 A. 2d 45 (1968).

The import of these decisions is certainly that no committing magistrate without an adversary hearing can constitutionally issue a search warrant authorizing seizure of "obscene literature". Since this was what was done in the instant case, the seizure was constitutionally defective. The court below should have suppressed the evidence which was the subject-matter of appellant's convictions.

Therefore, we reverse the judgment of sentence, and order appellant discharged.[4]

WRIGHT, P. J., would affirm on the opinion of Judge HABERSTROH.

WATKINS and CERCONE, JJ., dissent.

---

[4] The applicable statute upon which appellant's convictions are based is Section 524 of The Penal Code (18 P.S. §4524). The statute makes the possession of obscene matter with the intent to sell a misdemeanor. Whether the statute makes the offense a felony or a misdemeanor, it is clear that the Constitution requires scienter in any situation where a criminal statute regulates conduct involving First Amendment freedoms. *Mishkin v. New York,* 383 U.S. 502 (1966) ; *Smith v. California,* 361 U.S. 147 (1959). As we said in *Smith v. Crumlish,* supra, "it is of course the task of the legislature to establish a proper statutory scheme." We once again reiterate our recommendation that the legislature correct existing statutes lacking the necessary mental elements for prosecution.