**Commonwealth v. Rizzo**

*Michael A. Seidman*, for Commonwealth.
*Norman A. Oshtry*, for defendant.

LEVIN, J., April 4, 1973.—Defendant, having been tried and convicted of a violation of the Act of June 24, 1939, P.L. 872, as amended, 18 PS §4528, pertaining to exhibition of an obscene motion picture, by the Honorable Richard B. Klein, sitting in the Philadelphia Municipal Court, filed a timely appeal for a trial de novo in common pleas court. Before making a determination of the legality of the seizure of the film in question, we must determine whether this court is empowered to rehear a pretrial motion previously ruled upon by a common pleas judge sitting in the capacity and jurisdiction of a municipal court judge. While the authority of the president judge to assign common pleas judges to sit at municipal court trials is not an issue, Act of October 17, 1969, P.L. 259, as amended, 17 PS §711.18, there is a substantial question whether he can prescribe rules limiting the right of trial de novo by prohibiting pretrial motions from being relitigated at the common pleas court level.

The Commonwealth relies upon court regulations promulgated by the president judge to support its belief that a motion to suppress evidence which is heard at the municipal court level cannot be reinstated as part of an appeal to common pleas court. On February 29, 1972, President Judges Jamieson and Glancey, of the Common Pleas and Municipal Courts, issued General Court Regulation 72-7 which stated:

"Motions to Suppress shall be heard on the same day and immediately prior to the Municipal Court trial. The Judge hearing the motion to suppress will hear same as a Common Pleas Court Judge. In the event such motion is denied and defendant convicted, on appeal to the Common Pleas Court the motion may not be reinstated as part of the appeal."[1]

The Commonwealth also draws our attention to Rule 323(j) of Pennsylvania Rules of Criminal Procedure which provides that if defendant's application to suppress evidence is denied, such determination shall be binding at trial except upon the showing of evidence which was theretofore unavailable.

In response to the Commonwealth's position, defendant points to constitutional and statutory provisions governing appeal rights from municipal

---

[1] Defendant contends this regulation was ineffective at the date of the municipal court trial, January 6, 1972, and is inapplicable to defendant since it was not properly lodged with the Supreme Court's Criminal Rules Committee, as required by Rule 1 of the Rules of the Supreme Court of Pennsylvania, until July 5, 1972. Assuming, arguendo, that this were so, 1971 General Court Regulation #4 would have been in effect and would have achieved the same objective. See Commonwealth v. Morrison, C. P., April term, 1972, no. 983.

court convictions. Subsection (r) (iii) of the Schedule to the Judiciary of the Constitution of Pennsylvania, Article 5, §16, originally set forth the jurisdiction of the municipal court and enumerated defendants' appeal rights.[2] Under the authority of the schedule, the legislature was empowered to supersede that article with appropriate statutes.[3] The current statute, October 17, 1969, P.L. 259, sec. 18, 17 PS §711.18, as amended July 14, 1971, P.L. 190, no. 45, sec. 1, increases the jurisdiction of the municipal court, but reiterates the appeal standard of the Constitution:

"The municipal court shall have jurisdiction in all criminal offenses for which no prison term may be imposed or which are punishable by imprisonment for a term of not more than five years, including indictable offenses under the motor vehicle laws. In these cases, the defendant shall have no right of trial by jury in the municipal court, but shall have the right of appeal for *trial de novo* including the right of trial by jury to the trial division of the court of common pleas. Until there are a sufficient number

---

[2] Subsection (r) (iii) stated the jurisdiction of the municipal court: "All criminal offenses for which no prison term may be imposed or which are punishable by a term of imprisonment of not more than two years, and indictable offenses under the motor vehicle laws for which no prison term may be imposed or punishable by a term of imprisonment of not more than three years. In these cases, the defendant shall have no right of trial by jury in that court, but he shall have the right of appeal for *trial de novo* including the right to trial by jury to the trial division of the court of common pleas. Until there are a sufficient number of judges who are members of the bar of the Supreme Court serving in the municipal court to handle such matters, the trial division of the court of common pleas shall have concurrent jurisdiction over such matters, the assignment of cases to the respective courts to be determined by rule prescribed by the president judge of the court of common pleas." (Italics supplied.)

[3] Section 2 of the Act of July 14, 1971, P. L. 190, no. 45.

of judges who are members of the bar of the Supreme Court serving in the municipal court to handle such matters, the trial division of the court of common pleas shall have concurrent jurisdiction over such matters, the assignment of cases to the respective courts to be determined by rule prescribed by the president judge of the court of common pleas. (Italics supplied.)

"The foregoing jurisdiction may be exercised only by those judges of the municipal court who are members of the bar of the Supreme Court. The judges of the municipal court exercising jurisdiction under this section shall have the same jurisdiction in probation and parole arising out of sentences imposed by them, as judges of the court of common pleas of Philadelphia."

A serious conflict exists between the provisions enacted by the legislature, which have the force and effect of the Schedule to the Judiciary Article of the Constitution, and those promulgated by the president judges. The major bone of contention is the power of the president judge to limit the scope of a defendant's appeal rights. While we must try to give weight to any administrative orders which regulate the conduct of trials, we may not violate a defendant's rights by trying to enforce provisions which conflict with constitutional mandate. There are several questions which we must consider:

1. In what judicial capacity does a common pleas judge sit when assigned to municipal court?

2. What is the scope of the right to "trial de novo"?

3. To what extent does General Court Regulation 72-7 supersede, supplement or contradict the Pennsylvania Constitution?

The assignment of common pleas judges to the municipal court is necessitated by the demands

made upon the court system. Just as the president judge is empowered to assign judges to the trial division, family division, or orphans' court division of the court of common pleas,[4] so may he designate a common pleas judge to sit in municipal court. Despite the similarities, however, there is an important distinction which must be maintained. A judge presiding in the family, trial, or orphans' court divisions sits with coequal status to his judicial brethren in the other divisions. Without regard to the legal abilities of municipal court judges, some of whom have no training in the law whatsoever, it is a statutory fact that apart from the jurisdictional issue raised herein, the municipal court is not of concomitant jurisdiction with the common pleas court, and that an appeal for a trial de novo may be taken to the common pleas court from an adverse municipal court decision. Regardless of the identity of some judges who sit in both courts, there remains a difference between the finality and effect of decisions emanating from each of the two courts. Such is the mandate of the legislature and of the Constitution, by which we are bound.

Our conclusion does not prevent the assignment of a municipal court judge to common pleas court or of a common pleas judge to municipal court, 17 PS §711.18, and it will not interfere with the efficiency of the entire court system. Rather it will maintain the distinct jurisdiction and functions of the two courts, and will promote efficiency by providing a rehearing at the common pleas level in order to prevent the danger of drawn out, circuitous appeals based on erroneous decisions to admit evidence which are made at a municipal court hearing. Section 711.18 provides

[4] Commonwealth ex rel. Riggins v. Superintendent of Philadelphia Prisons, 438 Pa. 160 (1970).

for the concurrent jurisdiction by common pleas and municipal courts, but this jurisdiction can only be exercised when the *case* itself is removed to common pleas court. The assignment of a *judge* from one court to another, as in the case where a family court judge is assigned to sit in a criminal trial court, does not change the status of the *case*. Similarly, if a judge of the Supreme Court were properly certified to try a defendant in a trial court,[5] he would not be authorized to carry with him to the lower court those appellate powers he derives from the upper court.

In an analogous situation, Commonwealth ex rel. Riggins v. Superintendent of Philadelphia Prisons, 438 Pa. 160 (1970), the Pennsylvania Supreme Court recognized that separate and apart from the continuing power of all common pleas court judges to sit as committing magistrates, the president judge may assign a judge from any division of the court to any other division of the court. The judicial assignment in Riggins is noteworthy since the court decided that the presiding judge, who had been dispatched to the family court division, sat not as a trial judge, but as a committing magistrate in the division to which he was assigned.

While section 711.18 empowers the president judge: (1) to assign common pleas judges to either the common pleas or municipal court, and (2) to assign certain cases over which the municipal court has jurisdiction to either the common pleas or municipal court (until there are a sufficient number of law-trained judges serving in the municipal court to handle such matters), *this* case was docketed and tried as a municipal court case. The mere fact that Judge

---

[5] See Commonwealth v. Balph, 111 Pa. 365 (1886); Commonwealth v. Drum, 58 Pa. 9 (1868); Commonwealth v. Ickhoff, 33 Pa. 80 (1859).

Klein is a common pleas judge who was assigned to municipal court does not raise the case itself to the common pleas level, nor does it increase his own scope or, indeed, authority.

The second issue to which we address ourselves is the meaning of the term, "trial de novo," which is used in the Pennsylvania Constitution and 17 PS §711.18. Our main concern is whether the applicability of Rule 323 of the Pennsylvania Rules of Criminal Procedure so fragments the trial process as to separate categorically pretrial suppression motions from the other aspects of a trial, to which the right of appeal from a municipal court order certainly attaches.

Rule 323 was enacted in part for the purpose of implementing the landmark case of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774 (1964), which required that motions to suppress evidence be heard outside the presence of the jury, lest the panel be prejudiced by the evidence presented at the suppression portion of the case. It was anticipated that this procedure would afford a defendant *greater* protection than he would receive were all aspects of his case heard by the same jury.

The Commonwealth would denigrate the importance of this phase of a criminal proceeding and prohibit a de novo hearing of the suppression motion. We reject that approach as violative of the concept of trial de novo, which requires a rehearing *ab initio.*

This principle dates back to Commonwealth v. Benson, 94 Pa. Superior Ct. 10, 14 (1928), which enunciated the standard for trial de novo:

"But if an appeal is asked for, this is directed to the Court of Quarter Sessions and, if allowed, the case is heard de novo before a judge of that court. In such case, the Court of Quarter Sessions does not sustain or reverse the judgment of the inferior magistrate—it

does not review such judgment or the matters alleged as ground for appeal—it finds the defendant either guilty or not guilty—it either convicts or acquits him."

The scope of appeals de novo was defined in Manorville v. Flenner, 84 Pa. Superior Ct. 246, 248 (1924):

"[I]f the appeal has been duly allowed . . . the parties are entitled to a hearing upon such relevant and material evidence pertaining to the charge as they produce, and having submitted their evidence they are entitled to the distinct judgment of the court based upon the facts established by the evidence, the law applicable to the facts . . . 'When the appeal has been allowed, the charge or cause of action remains the same, but the proceedings to determine the guilt or innocence of the defendant are de novo . . . Com. v. Congdon, 74 Pa. Superior Ct. 286; Com. v. Brann, 78 Pa. Superior Ct. 345.' "

Support for this proposition is also found in Black's Law Dictionary (4th Ed., Rev. 1968), which defined "de novo" as "Anew; afresh; a second time," and in Southern Union Gas Co. v. Taylor, 82 N.M. 670, 486 P.2d 606 (1971), wherein the New Mexico Supreme Court stated:

"As above shown, our statutes expressly provide for appeals from a magistrate court to the district court shall be determined by trial de novo. We consider this to mean 'anew.' . . . This view is in accord with Black's Law Dictionary at 1677 (4th Ed. 1951), wherein 'trial de novo' is defined as: 'A new trial or retrial had in an appellate court in which the whole case is gone into *as if no trial whatever had been had in the court below.*' " (Italics supplied.)

Finally, Corpus Juris Secundum defines "trial de novo" as a *"trial anew*, from the beginning, in the appellate tribunal, according to the usual or prescribed mode of procedure in other cases, involving similar

questions, *whether of law or of fact"*: 22 C.J.S. §403(1). (Italics supplied.)

The concept of de novo appeal is not some fleeting notion that wavers with every new procedure that comes by the way. It is a fundamental and established prerogative which the Constitution and the legislature have granted defendants and which is not to be circumscribed by court rules and regulations.

Both the schedule to the Constitution and the statutory repetition of the appeal standard state that defendant has a right of appeal "for trial de novo, *including* the right of trial by jury . . ." (Italics supplied.) The significance of this language is unmistakable. The comprehensive right of appeal includes not only the right of trial by jury, but also many other essential rights which simply are not specified by the statutory language. The emphasis on the right to a jury trial does not preclude the inclusion of other rights, but merely stresses the importance of this single phase of a trial de novo. Indeed, it would be a misconstruction of the very plain language of the act to hold that a defendant were confined to this limited remedy on appeal. Considering the fact that a suppression hearing may be heard either before trial or *at* the trial,[6] it would certainly be anomalous to conclude that a pretrial motion could not be included in an appeal but that a motion considered at trial could be heard de novo.

The application of this right in Philadelphia Municipal Court proceedings has been established even more firmly by the Rules of Criminal Procedure for the Municipal Court of Philadelphia. Rule 6006 clearly states that a defendant has a right to appeal for a trial de novo, and Rule 6012 limits the admissibility in

[6] Rules 323(e) (f) of the Pa. R. Crim. P. and 6005 of the Municipal Court of Philadelphia.

evidence at the trial de novo of testimony taken during a municipal court trial or pretrial proceeding to those situations in which the witness is dead or unavailable, or where it is used for ordinary impeachment purposes. These guidelines demonstrate that testimony taken in the municipal court is admissible to common pleas proceedings in only a few, well-defined instances. In the absence of instructions *contra*, the lack of a rule directing the use of pretrial testimony serves as a restriction limiting the use of that testimony to the municipal court proceeding itself.

Having established that Judge Klein acted as a municipal court judge, and having established that the concept of trial de novo encompasses pretrial suppression aspects of a case, what then is the effect of General Court Regulation 72-7? In light of the constitutional guarantee to a trial de novo, we are compelled to adopt the interpretation expressed by the Honorable Paul Chalfin in Commonwealth v. Robert Taylor, Court of Common Pleas, April term, 1972, nos. 332-333, directing the assigned judge, regardless of his normal court assignment, to conduct the specified suppression hearings in the same *manner* as they would be held when presided over by a common pleas court judge. According to this line of thought, the phrase "as a Common Pleas Court Judge" necessarily refers to the procedure to be followed by the presiding officer rather than to his jurisdiction.

We depart from that portion of Judge Chalfin's opinion which attempts to distinguish pretrial suppression motions from the trial in chief and to limit the right of appeal to the latter. The right of appeal de novo is guaranteed by the Constitution and ensuing statutes. If this appeal right seems illogical or unnecessary, the proper remedy would be a constitutional or legislative change, not judicial intermeddling. This

right is to be contrasted with the right of appeal by certiorari, a procedure which was curtailed recently by the Board of Judges of the Philadelphia Court of Common Pleas. The power of the courts of common pleas to issue writs of certiorari was stated in the schedule to the Judiciary, Article 5, §26, which also provided that this power could be changed by rule of the Supreme Court. Since the Philadelphia Court of Common Pleas is entitled to adopt additional local rules,[7] the action by the Board of Judges constituted a proper procedure. There exists no comparable provision for the limitation of the appeal right of trial de novo, and this right remains intact despite rules or court regulations at variance with it.

Entirely apart from the foregoing exposition, in view of the recent case of Commonwealth v. Amick, 223 Pa. Superior Ct. 237, 298 A.2d 905 (1972), a decision of which Judge Klein did not have the benefit at the time he rendered his opinion, we are able to rehear the suppression motion at this time. As we will discuss below, Amick clarifies a heretofore misunderstood area of the law and in no uncertain terms requires a full adversary hearing *prior* to the issuance of a search warrant for the seizure of allegedly obscene material. Commonwealth v. DeMichel, 442 Pa. 553 (1971), held that a trial judge may reconsider the admissibility of evidence already ruled upon in a suppression hearing where there is new and different evidence at the time of trial. The same rule is mandated here by the corresponding need for the application of proper legal principles to a given set of facts. When a new appellate decision instructs us on the proper disposition of a whole line of cases, it is our obligation to apply these

---

[7] June 21, 1937, P. L. 1982, no. 392, sec. 2, 17 PS §62; March 30, 1939, P. L. 14, sec. 1; August 25, 1959, P. L. 751, sec. 1.

rulings before the cases go to trial in order that we do not unnecessarily and wastefully crowd our trial courts.

Proceeding to the merits of the motion to suppress, we find that we are bound both by Amick and the decisions preceding it to rule inadmissible in evidence the film which was seized.

Briefly, the relevant facts in this case are as follows. On January 4, 1972, Officer Valle of the Philadelphia Police Department's Morals Squad viewed the film being shown at the Adult Art Cinema, located at 49 N. 13th Street. After viewing the film, Valle prepared a memorandum describing the film. The memo served as the sole basis for the issuance by Judge George Woods of a warrant for the search of the cinema and the seizure of the aforementioned film. The affidavit also served as the basis of a "John Doe" warrant for the arrest of the acting manager of the theater. On January 6, 1972, Valle and two other officers again sat through an exhibition of most of the film, then seized the film and arrested the defendant. Defendant was released several hours later and was then advised by the district attorney's office that a hearing would be held the following day to determine the obscenity of the film. Neither defendant nor his counsel attended this hearing, at which the Honorable Paul M. Chalfin ruled the film to be obscene.

Defendant contends that the failure to provide an adversary hearing *prior* to the seizure of the film is violative of the First, Fourteenth and Fourth Amendments to the United States Constitution. He also contends that the lack of a statute specifically prescribing procedures to be followed by the courts renders any such seizure fatally defective.

Indeed, the procedure followed by the district attorney does not constitute a proper basis for the seiz-

ure of the motion picture, regardless of its obscenity. Although the United States Constitution does not guarantee the same protections to obscenity as are afforded freedom of speech and the press, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304 (1957), various procedural safeguards may not be by-passed. A statute setting forth specific time limits in which a final *decision* must be reached by the appropriate court, must predate the seizure if it is to be sustained: Freedman v. Maryland, 380 U. S. 51, 85 S.Ct. 734 (1965). Even if the duration of the court's examination is properly confined by a statute, there must also be provisions for an *adversary* hearing *prior* to the seizure of the material. In Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723 (1964), the Supreme Court held that an ex parte securing of a search warrant "did not focus searchingly on the question of obscenity" and that the seizure of the allegedly obscene material was unconstitutional since an adversary hearing on the issue of obscenity had not been held prior to seizure. Unquestionably, the seizure of a moving picture is governed by the same principles expounded in Quantity of Books. See Bethview Amusements Corporation v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. den. 397 U.S. 920, 90 S.Ct. 929 (1970).

The case-law in this Commonwealth has reiterated the standard requiring an adversary hearing prior to the interference with First Amendment rights. In Commonwealth v. Guild Theatre, Inc., 432 Pa. 378 (1968), the court stated that any prior restraint on the exhibition of a motion picture must be "very carefully circumscribed" and cited the lack of a procedure compelling a prompt, final judicial decision as its reason for vacating an injunction restricting the exhibition of the movie.

This standard echoed the decision of the Superior Court in Smith v. Crumlish, 207 Pa. Superior Ct. 516 (1966), which stated: "In the absence of statutory provisions assuring a prompt adversary proceeding and adjudication on the merits, we must conclude that the seizure of the film . . . is unconstitutional," and it foreshadowed a repetition of that standard in Duggan v. 807 Liberty Ave., Inc., 447 Pa. 281 (1972).

We believe that the impact of these decisions requires suppression of the evidence in this case. Moreover, the interests of justice would not be properly served were we to find that evidence was illegally obtained in violation of defendant's First, Fourth and Fourteenth Amendment rights but that the same evidence could be seized once the courts reached a final judicial determination. If the film has been illegally seized it is not admissible in evidence and is not subject to confiscation pursuant to this bill of indictment.

Had there been any disagreement about the effect of these decisions on the power of a magistrate to issue a search warrant authorizing the seizure of "obscene literature," these questions were put to rest in the recent Superior Court case of Commonwealth v. Amick, 223 Pa. Superior Ct. 237, 298 A.2d 905 (1972).[8] Reviewing the Smith, Guild Theatre, and Liberty Avenue decisions, Judge Hoffman concluded that the law in the Commonwealth *already* required a *prior* adversary proceeding to determine obscenity and that the suppression of evidence which was seized by police pursuant to a warrant issued by a committing magistrate was required absent such a hearing.[9]

---

[8] Judge Marshall has reached an identical conclusion about the effect of Amick in Commonwealth v. Cunningham, Valero, and Freedman, M. C. February term, nos. 2331-2333 (1972).

[9] In Commonwealth v. Rudolph Facenda, M. C., Philadelphia County, Nov. term, 1971, no. 3281, Judge Bullock reached a similar conclusion without making reference to Amick.

The decision in Amick neither overrules prior decisions concerning the seizure of allegedly obscene materials nor does it enact new rules. Amick merely applies in another setting the appropriate restraints embodied in prior case law. The Commonwealth's contention that we may not apply Amick retroactively misconstrues what we do today. Our reference to Amick only serves to show that our interpretation of the law in this Commonwealth concerning the seizure of allegedly obscene material is correct and that other constructions of those cases are in error.

For the same reasons that the issuance of the search and seizure warrant was impermissible, the warrant for the arrest of the acting manager was also issued in violation of defendant's constitutional rights. Both warrants were procured on the assumption that a magistrate is authorized to issue a warrant to arrest the violation of the obscenity statutes without conducting a prior adversary hearing on the issue of obscenity.

In view of the violations we have found herein, the likelihood that the grand jury relied on an arrest, seizure, and determination of obscenity which we hold to be unconstitutional, persuades us that we should quash this indictment. In addition to the usual illegality which arises out of an unlawful arrest or search and seizure, the failure of the police, district attorney, and issuing magistrate to conduct a prior adversary hearing on obscenity constituted an unconstitutional procedure which *cannot* serve as the basis for the initiation of criminal proceedings, either by warrant or by action of the grand jury, for enforcement of the obscenity statute.

" '. . . Proof that a grand jury heard irrelevant testimony, . . . or hearsay evidence . . . or incompetent witnesses . . . will not invalidate an indictment where other proper evidence was adduced before it

. . .' But we know of no case in this jurisdiction that denies the right to challenge the validity of an indictment on the ground of violation of the accused's constitutional rights here asserted—and so challenge successfully upon proper and sufficient proof ": Commonwealth v. Kilgallen, 379 Pa. 315, 325 (1954).

The issuance of the warrants here—indeed the entire procedure of arrest and seizure—was constitutionally impermissible, and no jurisdiction having attached initially, we order that the indictment be quashed.

## CONCLUSIONS OF LAW

1. With respect to a motion to suppress evidence, the burden is upon the Commonwealth to establish by a preponderance of the evidence that the arrest was founded upon proper grounds and that the evidence seized was lawfully obtained by the police. Where First Amendment rights are involved, the Commonwealth has the further burden to establish that the evidence was lawfully retained by the police.

2. The search and seizure and the arrest in this case were not made pursuant to legally valid warrants, since they were issued ex parte and without an adversary hearing.

3. The continued possession by the police of defendant's film at all times after January 6th, in the absence of a statute requiring prompt final adjudication of obscenity, constituted a prior restraint on defendant's First Amendment rights.

4. The hearing of January 7, 1972, did not adequately protect defendant's First Amendment rights under the United States Constitution since it was not held pursuant to a legal mandate requiring a prompt

final decision on the issue of obscenity and the film seized by the police is not admissible in evidence at the trial of the Commonwealth's case against defendant.

5. The arrest of defendant and seizure of the film were achieved through the use of an invalid, unconstitutional procedure, and the indictment based upon this evidence is quashed.

In light of the foregoing conclusions, it is unnecessary to consider whether the hearing of January 7, 1972, was an "adversary" hearing.

And now, March 30, 1973, defendant's motions to suppress evidence and to quash the indictment are granted.


## ADDENDUM

After the preceding opinion was filed on March 30, 1973, this court was apprised of the opinion of the Pennsylvania Superior Court in Commonwealth v. Hallowell, October term, 1972, no. 1553, filed March 27, 1973, which casts still another shadow on the attempt to limit a defendant's right to appeal to a common pleas court from an adverse municipal court disposition of his pretrial motion to suppress evidence.

Hallowell directs the Commonwealth to appeal to the court of common pleas, rather than directly to the Superior Court, those adverse pretrial suppression orders rendered by the municipal court which would terminate or substantially handicap the prosecution in a given case. If the instructions of Hallowell were confined to appeals taken by the prosecution, the effect would be to grant the Commonwealth not one, but two separate appeals from adverse pretrial suppression orders while the defendant would be limited to a single appeal only after a final verdict has been rendered.

We doubt seriously if such a variation is permissible under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

While a valid distinction can be drawn to justify the discrepancy in appeal rights of the opposing sides, there is no rationale to support the duplication of this right for the Commonwealth without providing similar recourse to defendant.

Ordinarily the Commonwealth may not take an appeal from a trial court's interlocutory order excluding evidence in the absence of an assertion that the order appealed from would terminate or substantially handicap the prosecution: Commonwealth v. Kloch, 221 Pa. Superior Ct. 324 (1972). This procedure protects the interests of the Commonwealth from being buried at an early stage in the proceedings without any recourse. Defendant cannot exercise his right of appeal, however, until a final determination of his guilt is made at trial. In theory, a defendant is granted protection equal to that afforded the Commonwealth since neither side is left out in the cold without some further remedy from an adverse pretrial decision. See Commonwealth v. Bosurgi, 411 Pa. 56 (1963).

A trial in municipal court often amounts to an abbreviated and hurried attempt to arrive at justice, and is frequently appealed from in the hope of securing a more thorough examination of the issues at the common pleas level. Simply because there are disparate procedural remedies available to the prosecution and defense is no justification for increasing the number of appeals to which one or the other is entitled. Neither side is entitled to a greater number of bites at the apple than the other; if the Commonwealth may take its appeal to the common pleas court, so may defendant.