## Commonwealth v. Evan

*James E. Davis,* for Commonwealth.
*Robert E. Levy,* for defendants.

GARDNER, P. J., August 28, 1973.—Defendants in the above-captioned case, Stephen Evan and John Krasner, were indicted by the Grand Jury of the Wyoming County Branch of this court for an asserted violation of the obscenity statute of the Commonwealth of Pennsylvania: Act of July 31, 1968, P. L. 892, (no. 269), sec. 1, 18 PS §4524(a).[1]

---

[1] "Whoever sells, lends, distributes, exhibits, gives away or shows to any person seventeen (17) years of age or older or offers to sell, lend, distribute, exhibit or give away or show, or has in his possession with intent to sell, lend, distribute or give away or to show to any person seventeen (17) years of age or older, or knowingly advertises in any manner any obscene literature, book, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing. drawing, photograph, figure or image, or any written or printed matter of an obscene nature, or any article or instrument of an obscene nature, or whoever designs, copies, draws, photographs, prints, utters, publishes or in any manner manufactures or prepares any such book, picture, drawing, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, figure, image, matter, article or thing or whoever writes, prints, publishes or utters or causes to be printed, published or uttered, any advertisement or notice of any kind giving information, directly or indirectly, stating or purporting to state where, how, or whom, or by what means any obscene book, picture, writing, paper, comic book, figure, image, matter, article or thing named in this section can be purchased, obtained or had, or whoever hires, employs; uses or permits any minor or child to do or assist in doing any act or thing mentioned in this section, is guilty of a misdemeanor, and upon conviction, shall be sentenced to imprisonment not exceeding two (2) years, or to pay a fine not exceeding two thousand dollars ($2000), or both.

" 'Obscene,' as used in this ·section means that which, to the average person applying contemporary community standards, has as its dominant theme, taken as a whole, an appeal to prurient interest."

Defendants entered pleas of not guilty to the indictment and, on May 11, 1973, elected to be tried by this court without a jury, which election was determined, after colloquy with defendants, to be a knowing and intelligent waiver of the right to trial by jury.

Trial commenced before this court on May 15, 1973, and continued into May 16, 1973. At the conclusion of the Commonwealth's case, defendants demurred to the evidence, and it is to a decision on the demurrers that this opinion is directed.

For the reasons hereinafter set forth, the demurrers are overruled.

The standard in ruling on a demurrer is whether the evidence of record and the inferences reasonably drawn therefrom would warrant the jury, the fact finder, in finding defendant guilty: Commonwealth v. Carroll, 443 Pa. 518, 526 (1971).

In an effort to sustain its burden to prove the guilt of defendants beyond a reasonable doubt, the Commonwealth produced evidence that on December 13, 1972, defendant Evan was in operation of an establishment denoted as an "Adult Book Store" in Meshoppen Township, Wyoming County, Pa., owned by defendant Krasner; that on the said date a Pennsylvania State Police officer went to the store and there purchased from defendant Evan for a total sum of $28.62, four paper-backed books, resembling magazines, received in evidence as Commonwealth's exhibits C-1 through C-4.

The Commonwealth proceeded on two theories: First, the evidence of the books themselves, and, secondly, the testimony of Cecil Krewson, Jr. and Lyman Krewson, offered as expert witnesses to establish the nature of the exhibits as an appeal to prurient interest and to prove violation of the contemporary

community standards of Wyoming County and immediate environs.

Defendants, at the time of the demurrers, asserted the following issues:

1. Witnesses for the Commonwealth did not qualify as experts and their testimony should be expunged.

2. The constitutionally proper test for community standards is the national community, not a local community, that is, State, county, or municipality.

3. Since the indictment failed to charge that defendants had knowledge that the magazines were obscene, it is fatally defective and must be dismissed as a matter of law.

4. The allegedly obscene materials are not obscene in a constitutional sense as a matter of law, given their manner of dissemination, and are protected expressions under the First and Fourteenth Amendments of United States Constitution.

5. Commonwealth's exhibit C-2 is not obscene as a matter of law.

6. The Commonwealth has failed to meet its burden of proof with respect to the constitutional definition of obscenity.

Decision by this court was purposely delayed because of the imminence of decisions by the Supreme Court of the United States which were, on June 21, 1973, forthcoming.[2]

Following the publications of the opinions of the United States Supreme Court in the cases cited in footnote 2, this court extended the privilege to both

---

[2] Miller v. California, 86 S. Ct. 566, 382 U.S. 990, 230 Cal. App. 2d 876, 41 Ca. Rep. 431; Paris Adult Theatre I v. Slaton, no. 71-1051; United States v. Orito, no. 70-69; Kaplan v. California, no. 71-1422; U.S. v. 12 200-ft. Reels of Super 8 mm Film, no. 70-2.

the Commonwealth and defense counsel to reargue the questions posed by the demurrers. Such reargument, accompanied by supplemental briefs, took place on July 11, 1973. At this time, defendants' position changed but little, although counsel vigorously asserts that the effect of Miller v. California, 86 S. Ct. 566, 382 U. S. 990, supra, is to constitutionally require proof of a State standard, a burden which the defense asserts was not met by the Commonwealth in the instant case in its attempt to prove Wyoming County standards on the basis of the testimony of the brothers Krewson. Defendants also submit that Pennsylvania statute under which defendants have been charged does not specifically define the proscribed material and that, as a result, the Pennsylvania statute is constitutionally overbroad and vague.

The Commonwealth, in its supplement, counters by asserting that the recent United States Supreme Court decisions render "moot" all questions in the instant proceeding, except the sufficiency of the Pennsylvania statute.

At this juncture, the court takes pleasure in commending both counsel for the manner in which each has conducted himself. Seldom, if ever, has this court been graced by the presence of an attorney who has shown more erudition in any legal field, let alone one of such complexity as the law of obscenity, than Robert E. Levy, Esq. Mr. Levy's learned representation of his client, coupled with the courtesy and deference he has shown this court, prompts the specific commendation in which the court indulges itself. This court was equally appreciative of the efforts, awareness, and intelligent application of the attitudes of relevance displayed by the district attorney. Too often there is inadequate appreciation of the problems of a rural district attorney, found generally, as here, in a one-

man office. Seldom is the vast rubric of knowledge and effort required of a rural district attorney recognized and this court feels it would be remiss in failing to use the vehicle of the instant proceeding to compliment James E. Davis, Esq., for his conduct, an exemplary performance which adds to his already high stature.

Initially, defendant argues that the Pennsylvania statute under which defendants were indicted, is constitutionally infirm based upon the scienter requirement of Smith v. California, 361 U.S. 147, 80 S. Ct. 215 (1959). However, this court is entitled to presume that the General Assembly of Pennsylvania did not intend to violate the Constitution of the United States [Consolidated Statutes, November 25, 1970, P. L. 707, no. 230, repealed December 6, 1972, P. L. —, No. 290, sec. 3, et seq., 1 PS §1922(3)] Additionally, this court has read and reread the subject statutory provision and finds that reading of the section under which defendants were indicated, as a whole, clearly indicates that only those persons who are in some manner aware of the character of the material that they attempt to distribute would be punished. The Pennsylvania statute, in the opinion of this court, does not endanger the innocent, but is a calculated effort to proscribe commercial activity in the obscene, the exact activity of which defendants are charged: Mishkin v. State of New York, 383 U.S. 502, 86 S. Ct. 958 (1966).

Certainly, the Pennsylvania statute was not designed to only cover the limited purview of the ordinance considered in the Smith case, supra. There, the proprietor of a book store was convicted under a Los Angeles City ordinance which made it unlawful for any person to have in his possession any "obscene or indecent writing . . . [i]n any place of business where . . . books . . . are sold or kept for sale." The United States Supreme Court found that the lower

courts had defined the offense as consisting solely of possession of a book found to be obscene, with a result that the ordinance was construed as imposing a strict or absolute criminal liability. This would not be a reasonable construction of the Pennsylvania statute.

It is to be noted that the indictment in the instant proceeding contains the word "willfully." Such a word necessarily imports guilty knowledge: 4 Wharton, Criminal Law and Procedure, §1774; page 579 Dunbar v. U.S., 156 U.S. 185, 15 S. Ct. 325 (1895).

Finally, the evidence produced at the trial is ample to prove scienter. Awareness on the part of defendants indicated by the signs on the building in which the December 13, 1972, operation was being conducted to the effect that the merchandise was of an adult nature, the admonition against entrance by any person under the age of 21 years, the repetitive quality of the formats of the books received in evidence, the pictures on the covers of exhibits C-1 through C-4, the exorbitant prices marked on the books, and the awareness of defendant Evan of the areas in the book store which contained each category of the offerings, convincingly indicated that defendants were aware of the character of the material purchased by the State Police officer, and that the activity was not innocent, but the calculated purveying of materials which could well be alleged to be obscene.

In summary, although this court reads the Pennsylvania statute to contemplate scienter, it is also of the opinion that constitutional practice would allow compliance with the principle of Anglo-American criminal jurisprudence requiring existence of a mens rea by a combination of a properly drawn indictment and sufficient proof, as here.[3]

---

[3] This court is not unaware of the dictum in Commonwealth v. Amick, 223 Pa. Superior Ct. 237, 298 A. 2d 905 (1972), by which

The further argument of defendants with reference to the Pennsylvania statute, that it is unconstitutionally nonspecific, resulted from the language of Chief Justice Burger in Miller v. California, supra, as follows:

"Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conducts specifically defined by the regulating State law, as written or construed."

At the outset, a reading of Miller v. California, supra, and its companion cases, to produce a determination of unconstitutionality of the Pennsylvania statute, and perhaps most of the statutes of other States of our Union, because of a lack of specificity would be incredible. It was the aim of the Supreme Court to "categorically settle much of the uncertainty that has characterized the law of obscenity." At first blush, it would seem presumptuous of this court in the application of the efforts of United States Supreme Court "unsettle" the law of Pennsylvania. Nonetheless, this does not mean that this court can overlook its responsibility to construe the Pennsylvania statute.

The Pennsylvania statute is adequate. The route to this conclusion is not torturous, though it does

---

Judge Hoffman, of the Pennsylvania Superior Court, reminded the legislature of the constitutional requirement of scienter in statutes involving First Amendment considerations.

A word of explanation if also due the Commonwealth with reference to its claim that the Rules of Criminal Procedure were violated by the effort of defendant to attack the indictment, in that such efforts were really in the nature of pretrial applications for relief and should have been in writing in accordance with rule 304 and filed, by virtue of rule 305, not less than 10 days before trial. In choosing to base its decision on this point on the merits rather than procedural failures, this court does not imply that it considers the cited criminal procedural rules as inapplicable in all such situations.

require heed to the mandate of the Statutory Construction Act of 1972, supra, and following the principle of the duties of Federal courts to authoritatively construe Federal statutes where a serious doubt of constitutionality is raised, and a construction of the statute is fairly possible by which the question may be avoided. See United States v. 37 Photographs, 402 U.S. 363 (1971).

Chief Justice Burger has indicated in footnote 7 to the case of United States v. 12 200-ft. Reels of Super 8 mm Film, et al., supra, that "if and when such a serious doubt is raised as to the vagueness of the word 'obscene' . . . as used to describe regulated material in (the Federal statute), we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific hard core sexual conduct given as examples in Miller v. California, supra." The specific "hard core" sexual conduct given as examples in Miller v. California, supra, is: "(a) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated. (b) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." These examples as to the meaning of the word "obscene" are in the context of the test set forth in Roth v. United States, 354 U.S. 476, 77 S. Ct. 1304 (1957), defining obscenity as existing when "the average person, applying contemporary community standards" would find that the work, taken as a whole appeals to the prurient interest. The Roth definition is the exact definition of obscenity contained in Pennsylvania statute. This court, without hesitation, construes the Pennsylvania statute and its definition of what is "obscene" as sufficiently constitutionally specific

so as to forewarn defendants against engaging in the conduct of which they are accused.

Although not necessary to this decision, this court has one remaining duty with reference to the arguments of defendants before entering into a discussion of the evidentiary merits of the case. Defendants have asserted that the brothers Krewson did not qualify as expert witnesses. This intention is rejected.

The qualification of an expert witness is a matter which is within the discretion of the trial court: Abbott v. Steel City Piping Company, 437 Pa. 412, 421 (1970).

Without at this point deciding that the Commonwealth was required to produce expert testimony, and without now commenting with reference to the weight or relevance of the testimony adduced, this court does not consider its acceptance of the competency of the witnesses, Cecil Krewson, Jr. and Lyman Krewson, as an abuse of its discretion. The testimony as to qualifications amply supports the findings of experience, maturity, intelligence and opportunities to observe as would be required to be found in order to have determined that the witnesses were competent to fulfill the role which they were called to play—that of "experts" on the subject of community standards and opinions with reference to the asserted obscene materials in evidence as Commonwealth's exhibits C-1 through C-4. If any two persons could be considered sufficiently "expert" to a fact finder in a matter such as the instant case, the Krewson brothers would be such persons.

At long last, this court finds itself at the point where a discussion of the merits of this case, in the light of its role in ruling on the demurrers, is in order.

Believing, as this court does, that the materials offered and received in evidence as exhibits C-1 through C-4 are sufficient in themselves for the deter-

mination of the question, i.e., whether or not they are obscene within the the contemplation of the Pennsylvania statute, a brief description of those exhibits is relevant.

Exhibit C-1 is a 42 page paper-backed book of a magazine format, entitled graphically "Cum in My Mouth," and subtitled as a "Photo-Exposé of Uninhibited Lovers with Actual Case Histories." It carried a printed price of $10, but had been "marked down" in black crayon, to $7.50. No author claimed credit for the compilation contained in the volume, including textual material describing childhood oral-genital contact, Lesbianism, group sex and incest. The cover, frontispiece, and back cover, in full "living color," involved photographs of acts of fellatio, including orgiastic culmination thereof. Other pictures included 34 photographs of explicit portrayal of male-female sexual relations, 15 photographs of acts of fellatio, four photographs of acts of cunnilingus, and one photograph of vaginal stimulation.

Exhibit C-2, again a paper-backed, magazine-format volume, is entitled "Be Long to Me," and carries a price of $6. The cover consists of a photograph of anal intercourse between two males with genitalia fully exposed. The volume is replete with photographs on each page of male fellatio, anal intercourse, all of homosexual portrayal. Textual material, unrelated except to general subject matter, is entitled, "Together Again," "Two Men in Need," and "Summer Day Dreams."

Exhibit C-3 is also of a homosexual nature, more explicit than C-2 in that what could be considered "simulated" in C-2 is actually portrayed in C-3. This missive, also carrying a price of $6, contains color and black and white photographs, portraying specific incidents of male fellatio, masturbation, and anal intercourse. Male genitalia is clearly portrayed, infre-

quently in a benign state, frequently in a state of erection.

Exhibit C-4 returned this court to heterosexualism and is a volume entitled "Heterosexual Response." The exhibit carried a printed price of $10 with a crayon "mark down" to $7.50. The front and back covers contain color pictures of male-female acts of fellatio, and, with the same degree of explicitness contained in C-1, the pages of this exhibit, without exception, contain photographs of male-female sexual intercourse, fellatio, cunnilingus, and, in several instances, portrayals of male ejaculation on various parts of a compliant female's anatomy. The textual material is pseudo-scientific, a discussion of genital foreplay, conventional sex, use of vibrators for sexual excitement, fellatio, cunnilingus, and orgasm.

Obscene material is unprotected by the First Amendment to the United States Constitution: Roth v. United States, supra.

To help a trier of fact such as this court, the Supreme Court of the United States, speaking through Chief Justice Burger, suggested the following basic guidelines to find obscenity:

"(a) Whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest.

"(b) Whether the work depicts or describes, in a patently offensive way, sexual conducts specifically defined by the applicable State law, and,

"(c) Whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

In Paris Adult Theatre I, et al., v. Slaton, supra, the United States Supreme Court determined that it was not error to fail to require expert affirmative evidence that the materials were obscene when the materials

themselves were actually placed in evidence, stating that such materials "are the best evidence of what they represent." Footnote 6 of the Paris case indicates that it was the opinion of the majority of the court that obscenity is not a subject that lends itself to the traditional use of expert testimony in that such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. The court indicated that no such assistance is needed by jurors in obscenity cases, concluding that hard core pornography can and does speak for itself, citing with approval United States v. Wild, 422 F. 2d 34 (1969), cert. denied, 402 U.S. 986 (1970).[4]

---

[4] This case involved a conviction for use of the mails for conveyance and delivery of obscene colored slides and photographs. The slides involved were determined by the court to be hard core pornography. The slides which prompted the prosecution were of two general types. The first group presented a nude male, seated or lying facing the camera, holding or touching his erect penis. The second group of slides displayed two males in an act of fellatio. The United States Court of Appeals for the Second Circuit disposed of the question of obscenity with the following:

"We do not believe, as appellants in effect urge, that the Constitution requires the Government to produce expert testimony about appeal to the prurient interest and contemporary community standards in every obscenity case . . . It is clear that such testimony can be necessary on certain facts . . . However, the present case presents no such peculiar problems of proof.

"We hold that in cases such as this the trier of fact needs no expert advice . . . In this context [particular emphasis on erect genitalia] , the issues of prurient appeal and offensiveness to contemporary community standards can be dealt with by a jury without expert help . . . Simply stated, hard core pornography such as this can and does speak for itself."

The material received in evidence in the instant case, in the opinion of this court, reaches levels of obscenity only imagined in the Wild case. In fact and in law, it is this court's further opinion that the evidence in the instant proceeding not only achieves the "plateau of degradation," referred to by Justice Eagen, of the

In short, this court, believing, as was true of Justice Potter Stewart, of the United States Supreme Court, in Jacobellis v. Ohio, 378 U.S. 184, 84 S. Ct. 1676 (1964), that it knows obscenity when it sees it notwithstanding the difficulty in defining it, can say of the evidence produced in the instant case, that "it has seen it, and it is."

With laudable caution, in view of the flux state in which the law found itself at the time of the May 1973 trial of the instant proceeding, the Commonwealth did not rest its case on the mere production of the materials represented by exhibits C-1 through C-4, but also produced the testimony of Cecil Krewson, Jr. and Lyman Krewson, as experts with reference to the contemporary community standards asserted as relevant to this proceeding and as to the dominant theme of the exhibits. The court has previously commented with reference to the exercise of its discretion with reference to the competence of the offered witnesses.

This court finds that the Commonwealth has sustained its burden on the "expert witness" theory. Defense counsel, as a result of Miller v. California, supra, has confined his geographical argument with reference to community standards to a statewide concept. This the court rejects. A determination, as in Miller, that there is no constitutional error for failure to offer evidence of "National standards" or the trial court's charge that the jury consider State community standards is not the equivalent of an assertion that the minimal standard is one of the State community. The absurdity of attempting to arrive at a "hypothetical standard of the entire United States of America" is equally applicable to a similar attempt

Pennsylvania Supreme Court, in Commonwealth v. LaLonde, 447 Pa. 364 (1972), as the residence of hard core pornography, it rises to the mountains above.

with reference to the Commonwealth of Pennsylvania. It is this court's belief that any person asserting himself or herself as capable of offering definitive testimony with reference to the standards of a State as diverse as this Commonwealth, would be suspect as earning the ancient appellation of being either "a knave or a fool." Further, it is not insignificant that Chief Justice Burger compared tolerance levels of the States of Maine or Mississippi to the *cities* of Las Vegas or New York.

Defense counsel also attacks the sufficiency of the testimony of the brothers Krewson in that, by admitting that Commonwealth's exhibits C-1 through C-4 had certain "informative" value, the witnesses were according the exhibits socially redeeming characteristics. Acceptance of this argument under the now discredited Roth-Memoirs test (Roth, supra; Memoirs v. Massachusetts, 383 U.S. 413, 86 S. Ct. 975 (1965)), if the Commonwealth had to rely upon the expert testimony alone, would, argue defendants, provide a fatal defect in the sustenance of its burden. Notwithstanding the recent pronouncements of the Supreme Court of the United States, the defense counsel still argues, under guideline (c) of Miller, supra, that the admission by the witnesses Krewson means that the Commonwealth has failed to prove exhibits C-1 through C-4 lack "serious literary, artistic, political, or scientific value." In making this argument, defense counsel fails to correctly apply the adjective "serious" and further fails to read the testimony of the witnesses in the instant proceeding in this light. A careful examination of the testimony leads to the inescapable conclusion that the witnesses called by the Commonwealth considered the exhibits to be vulgar, offensive, inartistic, nonscientific, and of no literary value what-

soever.[5] As to the virtue of an informative quality, this court suggests that equating the informational value of exhibits C-1 through C-4 with characteristics such as artistry, literary, political, or scientific value would be the same as a similar exercise concerning instructions as to the care and maintenance of a gas oven used for human destruction.

Notwithstanding its length, this opinion does not constitute a verdict in this case, and defendants are now free to proceed to produce as much evidence as they desire to be of aid to this court in its role as a fact finder to determine guilt or innocence. The complexity of the issue, the uncertainties with reference to the law, and the magnitude of constitutional implication were such that demanded extensive effort on the part of this court. That effort, hopefully properly expended in this matter, is consistent with the 185-pages of testimony so far taken, and the extensive briefs (57 pages plus exhibits for defendant and nine pages for the Commonwealth) received.

[5] See Mishkin v. State of New York, supra, wherein the court rejected an argument that disgust and sickening reactions to material was not a prurient appeal.